We will hear argument first this morning in Case 21-86, Axon Enterprise v. FTC. Mr. Clement. Mr. Chief Justice, and may it please the Court, Congress has expressly granted district courts original jurisdiction over all civil actions arising under the Constitution, and it is common ground that Congress has never expressly withdrawn or restricted that jurisdiction with respect to the constitutional claims at issue here. Instead, all that Congress has done expressly is to give additional jurisdiction to the Courts of Appeals to a person subject to an FTC cease and desist order. Axon is not subject to and does not challenge such an order. Instead, Axon challenges the constitutionality of statutes that insulate agency officials from presidential removal and the clearance process by which Axon is denied access to the courts. Nonetheless, the government insists that the grant of additional jurisdiction to the Courts of Appeals over orders not at issue here impliedly precludes jurisdiction that Congress expressly conferred. That argument does not follow from any explicit statutory text, and the three factors that this Court has fashioned to decide the reach of implied preclusion all favor district court jurisdiction here, just as in free enterprise fund. First, any review mechanism that delays judicial review of a here and now constitutional injury until it has come and went does not provide meaningful review. Second, the constitutional claims here are wholly collateral to the merits of any particular contested acquisition. And third and finally, not only does the agency lack expertise in these constitutional issues, it is wholly outside its authority to declare itself unconstitutional or strike down removal restrictions on ALJs that are located in an entirely separate statutory provision. Simply put, there is nothing in the statutory text nor the Thunder Basin factors that provides a basis for finding in two express grants of jurisdiction an elimination of the jurisdiction for the claims at issue here. Mr. Clement. Mr. Clement, is this case distinguishable from free enterprise? It seems as though we've been down this road. We don't think it is distinguishable from free enterprise, Justice Thomas. Obviously, some lower courts have disagreed with us on that, but I don't think there's any material basis for distinguishing the two, especially when you look at the nature of the claims here. The nature of the claims here are structural claims that go to the very existence of the agency, and those are wholly collateral to the merits of any acquisition. Those claims are beyond the competence of the agency, and the agency is not in a position to provide meaningful relief. Could you take just a minute to set out just more specifically why the agency could not consider these constitutional claims within its structure? I think you'd have to start by saying what it actually does and what would be reviewed at the appellate level after the agency issues an order. Sure. So if you start with the typical case where the agency builds an administrative record that informs their position on a particular transaction, all of the claims here are sort of cross-cutting or maybe even logically anterior to any of that process. One of the due process claims goes to the clearance process by which a transaction goes before the FTC rather than the Justice Department, and that claim obviously doesn't really focus on FTC agency action, but it focuses on executive branch action that's beyond the FTC. And then as to the more structural claims, I mean, those are beyond the competence of the agency for two reasons. One, no agency has the authority to declare itself unconstitutional, but if you think about the double four-cause removal restriction on the ALJs in particular, I mean, the most logical way to remedy that violation, at least following the logic of free enterprise fund, would be to declare the second layer of four-cause removal provisions unconstitutional, but that second layer of provisions is in Title V, 5 U.S.C. 7521. It's not in the FTC Act. So the idea that the FTC could declare another act of Congress in a different title of the U.S. Code unconstitutional is completely beyond its kin, but, of course, that's exactly what district courts do on a day-to-day basis exercising jurisdiction under Section 1331. May I ask, Mr. Clement, about the scope of your argument? Because sometimes, as you just responded to Justice Thomas' question, you're focused very specifically on the constitutional claims at issue in this case, and in particular, the Thunder Basin analysis lends itself to that kind of focus. You have other arguments in your brief. You know, sometimes you call them the plain text arguments or just about the way 1331 and the review provisions interact, which would seem to go much further, would seem to sweep in not just constitutional claims but statutory claims and would seem to sweep in many preliminary rulings, you know, like truly, truly interlocutory rulings. You know, it might be evidentiary rulings. It might be discovery rulings. So some of those statutory arguments would seem to extend way beyond the constitutional claims at issue here. So which are you really arguing? So, Justice Kagan, I'm really arguing to win this case on the Thunder Basin factors. That seems to be the straightforward way to win the case. If I could just say a moment about the broader arguments. I think if you look at the statutes, if the court were drawing on a clean slate, I would probably say the right way to decide these cases is, of course, there's jurisdiction, and there's a whole host of non-jurisdictional doctrines like rightness and exhaustion that would probably get you to almost the exact same result as the Thunder Basin factors. So if I were a law professor, I might quibble that these factors that the court has come up with for jurisdiction really should go to non-jurisdictional factors and these cases should be resolved on D6 rather than D1. But I'm not a law professor. I'm here to represent a client, and I think our client wins well under the Thunder Basin factors, so we're happy to win on those factors. Counsel, almost any administrative process could be called collateral on constitutional issues. Whether it's tax review, as in Elgin, or it's immigration issues, all of those petitioners are required to go through administrative processes despite the fact that most of those agencies can't reach constitutional issues. So I don't know what makes this situation different other than perhaps, and I'm not sure about this, the existence of the adjudicatory body, the fact that the AF, your removal clause challenge. But all of the other due process challenges seem to be the quintessential process-dependent claim. You can't get more interwined than that. Your argument seems to be saying that any due process claim counts. What about the claim in the companion case Cochran that has been abandoned, that the SEC violated her due process rights by failing to follow its own rules and procedures? That's a classic due process claim that, I think, in almost every other agency action, we wait until the end of the review process for the court to look at. So it seems to be that you're saying this is unfair because I have to go through the process. But going through the process is what due process is all about. I don't understand why you are any different than any other administrative agency petitioner who has to go through the process, a flawed process, and wait until the end to have that corrected. So, Justice Sotomayor, with respect to due process claims in particular, I don't think we're arguing for a special rule for this particular agency. As I look at the Court's cases, and they go all the way back to Matthews v. Eldridge and McNary, so this would apply in immigration cases as well, the distinction that the Court has drawn is between cross-cutting due process claims that don't in any way depend on the circumstances of a particular case. So if you think essentially on its face that the statute doesn't provide due process, then that does seem like a claim that is wholly collateral to the merits of any particular case. Well, what about if you win? You don't care how you win. Meaning, once you're in a case, if you've been given inadequate process but you still win, you're not going to suffer the litigation cost, etc. But it doesn't really matter what basis you win on. Well, this just gives you another hole in your pocket, another card in your pocket that you can play if you lose. I don't think that's quite right, Justice Sotomayor, which is, you know, this isn't a case like Elgin, where there's a review process for losing your federal job, and all the plaintiffs wanted was their federal job back. This is not a situation where all we want is to not have a cease and desist order. Oh, it is, because your complaint asks the District Court to enjoin the FTC and its commissioners from pursuing an administrative enforcement action. Your motion for a preliminary injunction asks for the same thing. Absolutely. So it is tied to the proceeding, very directly. It's tied to the proceeding, but it's not tied to a cease and desist order in the same way as the challenge in Elgin. We believe that we suffer a here-and-now constitutional injury just from being subjected to an unconstitutional agency process with respect to the removal restrictions, and we think we suffer an injury the second that we are assigned to the FTC rather than the Justice Department and effectively denied any early access to court. Those are the claims we want to bring. They're not the claim that, like, we wanted to have three witnesses and we only got two, and gee whiz, if the ALJ would have just given us one more witness, that would have satisfied due process. Those are the kind of claims that are not wholly collateral, and those are the kind of claims that belong in the administrative process. So what's the remedy that you – sorry, go ahead. I was just going to say that the examples you gave are pretty extreme, to make your point, but it strikes me that your distinction between structural constitutional claims and the particular due process claims in the proceeding is going to be hard to draw in a large number of cases, particularly if you prevail and people – it makes a difference to when they can bring their constitutional or other challenges. Well, with respect, Mr. Chief Justice, I don't know that that's the case. I mean, all we're asking for, as I stressed with Justice Kagan, is an application of the Thunder Basin factors. I think what we've been talking about really goes to the second factor about what it means to be wholly collateral, and I don't really think that's that difficult to apply in the due process context. If you think that the statute as set up just says it doesn't give you any witnesses, and that's going to be true in every single hearing, that seems like a case you ought to be able to – Well, that's – yeah, sure, but that's an easy case. I mean, any time you get multi-factors, as in Thunder Basin, the application is going to be difficult in, I think, many cases. I mean, look, there are going to be edge cases, to be sure, and I guess I would – you know, this is where I would sort of remind you that the statutory text actually is pretty clear here, and if we're going to have a rule for the edge cases, I'd rather live in a republic where the rule for the edge cases was we err on the side of giving the citizen early access to the courts as opposed to erring on the side of deferring judicial review. I mean, the court could provide a different presumption, I suppose, to help with the edge cases, but I'd prefer it if it was a presumption that was in favor of judicial review. After all, Congress did pass 1331. It does seem to promise the people that if you have a problem with the constitutionality of government action, you can get early access to court to sort it out. But, Mr. Clement, why doesn't whether or not it's wholly collateral turn to some extent on the remedy that you're asking for? It would seem to me that one way to think about the collateralness of this is whether, when you're done with it, the claim that you want to bring in district court, you would go back to the agency and the agency would proceed. I think that in a situation in which you have the type of claim, maybe some of your removal claims with respect to the ALJ, for example, if the remedy is just give us a new ALJ, then there's a concern that what is happening by allowing citizens to go to the district court is that they're sort of superintending the agency process, whereas you could say, and therefore you could say it's not wholly collateral in the same way as if you went over and the remedy was to terminate the agency process. So why shouldn't we be thinking about the collateral nature of this based on the remedy that you're asking for? So two things, Justice Jackson. First of all, I think the most sort of straightforward way to think about whether it's wholly collateral is does it turn on the facts of the particular case or is it a claim that would be the same, no matter what the facts of the particular transaction is or the particular immigration circumstances of an individual. And if it really doesn't matter on your circumstances, then I think it's wholly collateral. To your point about the remedy, though, I think that favors us, especially on the removal claim, because I think the problem is there are cases where the remedy you want is really just to have your federal job back or the Mine Safety Board order vacated. And in those situations, maybe it makes sense to say, yeah, you're in the process, it leads to an order, and at the end of the order you can get it vacated. That's good enough. That's a meaningful judicial remedy. I guess maybe I'm not so clear. I meant a remedy that does not have you returning to the agency in any respect, so that your claim is such that, you know, the core constitutional claim, this agency doesn't have power over me. You can go to the district court because if you win, then the agency is done. What I'm concerned about is the interpretation that allows you to take certain claims over to the district court and have it impact the agency, ongoing agency proceeding, in a way that makes it unclear that that's what Congress intended in terms of saving 1331. So I guess I would just amend your observation. I mean, I think you're right that if you have a remedy that says I ought to be completely immune from this agency's actions at all, that's something that does seem like it should be able to go forward in district court. But I think if you have a claim that's effectively I shouldn't be in front of this agency at all as currently structured, that is equally a claim that doesn't belong in front of the agency. And I think, as I indicated to Justice Thomas, I think it's particularly clear when you start thinking about the right remedy for the double four cause removal restriction here. Now, obviously, you could remedy a double four cause removal restriction by invalidating either layer of removal. But if a court were to follow the pattern of free enterprise fund, you'd get rid of the second layer of removal restrictions, and those are in 5 U.S.C. 7521. Mr. Clement, can I just say a little bit about what remedy you want for your black box claim? Are you arguing that everything needs to go to the DOJ track, or are you saying you just want transparency on that claim because we've been kind of focused on the removal? I think either one of those would probably remedy the claim. So, you know, I think we'd ask for what would probably be the most robust remedy, which is send us to DOJ. We want early access to court. But if a court fashioned a remedy that said that, OK, we're going to provide transparency to this process, and I don't know what it would be, you know, everything sort of A through M goes to DOJ and everything N through Z goes to the FTC, something that would tell the citizenry, OK, there's a rational process by which you're being denied early access to court, I think that would at least be an available remedy. But obviously we got stuck, you know, we lost at the threshold here, so we didn't get to the point of electing our remedies. Do you think that's a weaker case for immediate pre-enforcement action in district court than the removal claim? I mean, I suppose by one tick on the scale, sure. I mean, the claims that go to the very existence of the agency or the structure of the agency as it's currently structured have to be, in my view, the strongest possible claims. But I think a due process claim that actually attacks a decision that's interior to the whole agency process would be, you know, pretty high on the list as well. If I could say one thing about why I think in addition to the existential nature of the kind of removal claim, why that's such a strong case is if you sort of think about like the theory for why it is that like a challenge to kind of early agency action doesn't go to federal court, it must be, I think, on the theory that, well, until it gets to the Article 3 court, there's at least supervision by the Article 2 branch that provides the citizen with some protection of their liberty. So if your whole claim is that the Article 2 supervision being provided by the president is insufficient, then you're really saying, I don't have any protection the whole time this stays before the executive branch. And that really does seem like a claim that almost uniquely belongs in district court. And then it gets resolved one way or another. Can I ask you about Free Enterprise Fund in particular? Because Judge Lee, in the opinion in the Ninth Circuit, really tried to carefully parse Elgin and Free Enterprise Fund. What do you do with the part of Free Enterprise Fund that emphasized the fact that it was the investigation stage and that would be the only way? Therefore, there would be no way ever to get a judicial review of the claim that issue there. I guess it's the one paragraph on 490 of Free Enterprise Fund. How do you think we should deal with that? Well, I think you should deal with it by sort of applying it here and saying, actually, it's on all fours with that situation. I mean, obviously, in Free Enterprise, because of the structure there, you have the unique sort of dynamic that, you know, there was a complaint about the board's activity and the review mechanism dealt with the commission's activity. But with respect to the idea that the only real way you could get review for the here and now injury that the Free Enterprise Fund was suffering was to sort of precipitate a contempt sanction and go to court immediately, that's exactly our situation. Our beef here isn't limited to the cease and desist order. We've been trying for years to get out of the FTC process. We've even offered to walk away from the transaction. So we think just being subjected to their processes as currently structured is our injury. The only way we could try to get that remedied is exactly what the situation was in Free Enterprise Fund. We could try to resist any cooperation with the FTC, sort of get ourselves in contempt and see if they did something to bring us to federal court. But this court has said you don't have to bet the farm in that kind of way. In your distinction of Elgin, I want to explore briefly. So if you were bringing a claim challenging the constitutionality of the statute that was being investigator or the basis for the investigation slash enforcement action, you couldn't or what's your answer to whether you could bring a challenge like that in district court? Well, maybe the easier way is to just articulate how I would distinguish Elgin and then maybe if that doesn't answer your question, I'm happy to respond. But to me, the critical thing in Elgin was the party was challenging the very government action that the review mechanism was set up to provide a special avenue for review. So it was the challenge to adverse major employment action. And what the court held, I think correctly, is it doesn't matter what your theory is. It can be a cross-cutting constitutional theory. But if you're challenging the exact same adverse major employment action, you have to go through the process. So if we waited until the very end of this process and challenged the cease and desist order, I think then we'd be in all fours with Elgin. And I actually think no matter what our theory was at that point, we'd have to bring it in the court of appeals. We couldn't at that late stage challenge the cease and desist order itself in district court. But to me, that's the way to distinguish Elgin. And one last one. What's your exact formulation of the rule? So a challenge to the structure of the agency, I think, is covered. Anything beyond that? So I would start with Judge Bumate's formulation that it's structure, existence, and procedure. So let me stop you there. Procedures concerns me because I think that could be wildly open-ended and present some of the problems that the Chief Justice and others were pointing out. So respond to that. It concerns me as well, which is why I was about to say by procedures, I think he meant the kind of cross-cutting procedures that don't turn on the circumstances of any particular case. And I think that actually explains some of the pre-Thunder Basin cases like McNary and Matthews v. Eldridge. But I did want to add one important point. That describes the basic universe of situations that you're dealing with, these kind of like specialized appellate court review regimes. But there are other situations where you get into district court under 1331 despite the government making a Thunder Basin argument. And a great example of that is the first Sackett case back in 2012. Because there you had a situation where the government, relying on Thunder Basin, was telling the citizen, hey, wait, you can't get into court to challenge this determination. You have to wait until we bring an enforcement action. And this court rejected that argument and said, no, the citizen gets into court under 1331. So I think the formulation with that slight amendment that Judge Bumate had is the right one for this class of cases. I think that the gloss you put on the procedures language doesn't go all that far. I mean, even if you say it's a challenge to a procedure that extends to all cases, I mean, you know, agencies have a lot of procedures just as courts do. And, you know, suppose you claimed something about the way agencies treated witnesses or what kinds of witnesses were allowed or what kinds of cross-examination or when subpoenas were issued. Or you could just keep on going. I mean, would all of that go to a court first? I don't think so, Justice Kagan, and that's sort of the beauty of the Thunder Basin factors. Because if you're talking about a procedural provision that's put in only by a rule and you want to challenge that, I think you could say, well, that's actually within the agency's competency to fix. But if Congress passes a new agency tomorrow and it just says, you know, the citizen's going to be dragged in front of there and they're going to be denied any ability to call any witnesses, I would think that you would actually want people to be able to get into court immediately and say, well, that's crazy. We should declare that that restriction is unconstitutional. It doesn't turn on the circumstances of any individual's case. So I do think that's the right rule, but, you know, and I think, you know, our particular due process challenge I think is a strong case because it's a step that's anterior to the agency itself's process. So can I ask just on the actual challenge that you've brought? It seems to me that the hardest of the Thunder Basin factors for you is the meaningful review factor. Because, you know, basically what we think about appeals generally is you have to wait until the end. And often that's a lot of inconvenience, it's a lot of expense, but we're very stingy in allowing interlocutory appeals as long as you'll get your chance in the end. So what makes this different? So what makes this different is that the relief at the end of the process doesn't really go to the heart of the constitutional injury, which is being subject to the unconstitutional agency action. So I thought you were going to say that, and I was trying to think of other examples that are pretty analogous to it. So I would think that when somebody claims that a court did not have subject matter jurisdiction, or when somebody claims that there was no personal jurisdiction as to that person, or a criminal defendant saying that a prosecutor was unconstitutionally appointed, all of these are basically saying the entire process is illegitimate and I should not have been subject to it. So what makes yours different from those? Well, two things, Your Honor. One, as to the removal provisions in the Humphreys executor claim, for that matter, as to those provisions, there's a big difference, which is all of the cases that are already in federal district court, it's taken as a given that the Article III judges are legitimate, properly appointed, properly insulated, by good behavior and all of that. Whereas here, on the Article II claims, we're basically saying that the process we're stuck in until we get to Article III court is itself constitutionally deficient as a structural matter. So that does seem kind of fundamentally different. And then with respect to the other claims, I mean, nobody says in the situation of the district court, court of appeals, collateral order kind of context, nobody says that the district court is like powerless to hear the claim in the first instance. It's just the district court is perfectly powerful to hear the claim. It's just ruled against you. And in this situation, if we have a claim before the agency, like our due process claim about the clearance process, that is anterior to the agency, the agency has no business deciding it, that doesn't seem analogous to the situation in most of the collateral order cases. And, of course, even in the collateral order cases, you do have things like double jeopardy, where you conceptualize the injury as really being subject to the procedure or the proceeding, rather. And I would say that it's a fair description of the claims that we're bringing. Thank you, Counsel. Justice Thomas, anything further? Just briefly, Mr. Clement, there's a lot of discussion about reaching a final order and then assuming, I guess, an appeal. What percentage of these cases actually go to a cease and desist order, and what percentage actually are appealed? So I think, I mean, I don't have the exact denominator, I'm afraid, so I can't tell you. The overwhelming majority of these cases do settle out in the process, and so there's no appeal. It's a relatively small number of these cases where the party has kind of a wherewithal to endure the whole process. And one of the things that does sort of skew the numbers is that the FTC's position has been that they essentially won't accept a settlement unless you forego your appellate rights. And so it is really, you have to be very hardy to make yourself all the way through that process and preserve your objections. Justice Alito? Are the so-called Thunder Basin factors simply inferences about congressional intent, and if that's what they are, are they the whole ballgame? Is there anything else that the court should or must consider in determining whether, in a case where we're under the Thunder Basin line of cases, anything else that is proper for us to consider or that we must consider? So, Justice Alito, I guess what I would say is, you know, if you want to sort of save the Thunder Basin factors, I think you would construe them as being helpful guideposts to discern the underlying legislative intent. You know, it's more traditional for this Court, of course, to discern legislative intent from text, and I think if you did infer legislative intent from text, you would end up in a world, as I was describing to Justice Kagan, where you much more readily recognize that there's jurisdiction in the district court, but then you start applying all these other doctrines like finality and exhaustion. I can't help but look at the Thunder Basin factors and think that the court was sort of cheating a little and sort of front-loading some of those non-jurisdictional factors into the jurisdictional inquiry, but be that as it may, we think you'd probably get to almost the same result by applying finality, rightness, primary jurisdiction, all of those other doctrines. Justice Sotomayor? Justice Thomas asked you a question about the impetus to settle. That's true in an Article III court. The number of district court cases that go on appeal is very small. They're very true in criminal law cases where most are settled by plea, and most prosecutors require waivers there. So I'm not quite sure that merely because a good number of cases settle means that you still don't have an adequate and meaningful opportunity to raise these claims before a court, which is what I think Thunder Basin... Justice Sotomayor, I... ...Thunder Basin was based on, which is if you have a chance to raise it, that's enough. So I guess what I would say is I don't think my answer to Justice Thomas was meant to subsume all three factors or be a complete answer, but I do think it's worth recognizing how anomalous this situation is because if you take the case of my client, for example, they offered basically to walk away from the transaction and infuse the potential acquisition company with cash. Now, it seems to me that if we were in front of an Article III court and with the Justice Department prosecuting... Now you're getting to the merits, Mr. Komen. Thank you. Okay. Justice Gorsuch? Tell me what I'm missing. 1331 says that district courts have jurisdiction over these claims, absent any other consideration, and normally we consider district courts bound to exercise their jurisdiction when they have a claim. Okay. Then we have the FTC Act that says cease and desist orders can be reviewed in the courts of appeals rather than the district courts. Those are the two statutes we have. We don't have a cease and desist order here. I would have thought that might have been the end of the game and that the Thunder Basin factors would come in handy if we did have a cease and desist order. In that circumstance, then perhaps we would make you wait and consider all these prudential factors about interfering with agency proceedings. Again, what am I missing? So, I don't think you're missing anything. I think you're going to love Mr. Garr's argument later today. But what I would say is I do think if you go with that simplistic, you know, it's simplistic. No, go ahead. Simplistic. I didn't like simplistic. Straightforward. Textual, maybe? How about that? Textual, straightforward. All of those words seem to apply. Simplistic was a bad word choice. It could have been worse. But if you go with that approach, then I do think that, you know, district courts are going to have to be ready to apply a whole bunch of, you know, fairly well-established doctrines of rightness and exhaustion, primary jurisdiction, maybe abstention. Don't they do that all the time? I mean, maybe that's simplistic. They do do that all the time. I don't think it's, like, entirely kismet, though, that if you step back and say, what would the result be of applying all of those other non-jurisdictional doctrines? Boy, I think you'd get to a situation that said, they've got a claim that's wholly collateral, you don't get meaningful review, and the agency doesn't have any expertise. That's going to go forward to the merits in the district court. And if one of those or two of those actually aren't satisfied, then probably you're going to get tripped up by rightness or exhaustion or something. So it would be a cleaner world. It would be a simpler world, a more textual world to go that route. But I think you're going to end up in kind of the same place, which is why we're here happy to win on the Thunder Basin factors as well. And then you haven't had a chance to address the government's APA argument. Put aside the waiver or forfeiture issue. If you could address it on the merits. Sure. I mean, we don't feel like we have anything to fear under the APA argument. We actually think the APA gets you to a very similar place. And we do think the APA is best understood as a non-jurisdictional argument, one of the many, and it does basically say, you know, you should apply a specialized administrative regime, but not where it doesn't provide adequate relief. And we think this is a classic situation where it doesn't provide adequate relief. So another way of sort of answering your first question is to say, I suppose you could get to the Thunder Basin factors just as a gloss on the APA, but I don't think it would cause you under any circumstances to say that these claims can't go forward to the merits in district court. And Justice Kavanaugh? Justice Barrett? Just a quick question. So Justice Kagan asked you about interlocutory appeals, and it's true they're disfavored in all the contexts in which Justice Kagan was saying. And I had been thinking about those, too, as I was reading your brief and thinking about your argument. I want to ask you if I'm making this distinction in the right way. When we are talking about appeals or interlocutory appeals from district court to the Court of Appeals, we're talking about 1292 and finality under 1292 and exceptions to what can be final. So, you know, is it a collateral order? Could we treat it as final for that purpose? But this isn't that, really, because we're not asking whether it's final or collateral in that sense of finality. And we're not talking about looking at 1292 in a definition of final. A pre-enforcement challenge isn't interlocutory in that sense because there's no appeal from any kind of order that's been made, right? So what are we supposed to draw? Because, I mean, I have some of those same questions in my mind, too. What are we supposed to draw from that context of interlocutory appeal? Nothing? Well, I think you can draw something, which is I do think even in that context, although it's focused on a different question, there is this concept of whether the claim you're bringing is collateral from the merits. Right. And I do think that's a useful thing to borrow and bring over to this context. But I also think, as I said to Justice Kagan, it's also important to recognize the differences in the context, because in an Article III court, when you have some claim that doesn't qualify for the collateral order doctrine, you've still gotten a ruling by a properly structured entity that has every confidence to decide the issue in your favor. We don't have issues where we concede that the district court doesn't have any ability to consider the issue, but you're still second to it. Jurisdiction to decide jurisdiction. Yeah. Yeah. We don't accept that notion. I mean, so you already are in a much better position if you're in district court. Again, the thrust of our complaint is we would love to be in district court fighting the bona fides of this acquisition. So I do think it's a different context. Thank you. Justice Jackson? Yes, Mr. Clement. Did I misunderstand you to say that your client has not received a cease and desist order? Is there such an order at issue here? I mean, not at issue. Did you get a cease and desist order, your client? No. The cease and desist order for purposes of the statutory review provision is the culmination of the FTC process. I see. So we haven't gotten that. But you are in the active agency review process. Well, it's a little bit complicated because we do get a stay of the process pending this case out of the Ninth Circuit. Absent that stay, the agency had decided that they were going to go forward with respect to your client. Not on the morning that we filed our complaint. On the afternoon that we filed our complaint.  And, you know, look, I don't know, for purposes of the argument I'm making today, I don't know that anything turns on that. For some of these non-jurisdictional doctrines, like abstention, who filed first might matter a lot. Can I just explore that, though? Because I'm wondering why anything doesn't turn on that. In other words, when the agency decides to go forward, I would assume you're in the channel then of agency review as opposed to cases like Free Enterprise Fund where they were just in the investigative world and they hadn't decided. And so once you're now in the agency process, I'm concerned about people using the district court jurisdiction to sort of stay the agency process or do an end run around it. And I'm wondering why isn't that a legitimate concern given a statute in which it's pretty clear that once you are in the channel, they've given exclusive review or exclusive jurisdiction to the court of appeals to review a final order of the agency. So two kinds of answers, Justice Jackson. The first is generally for jurisdictional purposes, it's the situation at the time of the filing of the complaint that matters. So even if you're going to draw this distinction, I think we're on the right line. But the second and probably more responsive answer is I think this is why you have to look at the nature of the claim that's being brought. Because if you're bringing sort of a claim that's really about the agency process and that's your beef, then I think it's fine to say we're in the channel of review. But if you're saying this whole agency is unconstitutional or it has no business exercising jurisdiction over this case, you're not in the regulatory channel. You're in the regulatory maw. That's your whole claim is that we don't belong here at all. And it doesn't matter to you that as a result of making that second kind of claim, you would be terminating. I mean I'm with you to the extent that you say I'm making that claim and the point is they have no jurisdiction over me. And district court, if you agree, I'm out and the whole thing is over. What I'm concerned about is drawing a line that involves you returning to the agency after you've made a claim in district court. Because then it seems like the district court is being used to superintend the agency process rather than making the very kind of claim you say you want to make in this case. But if you think about our two claims, or we have three claims. It depends how you number them. But if you think about our claim that we shouldn't be in the FTC at all, that seems to fit your paradigm. The relief we could get there, at least one of the forms of relief we could get, is essentially to be sent to the DOJ. But then if you think about our removal claims, what we're basically saying is we shouldn't be sent to the agency at all as it is currently structured. The agency can't help us with that claim. They're powerless to do anything about the claim. But the district court isn't. And what the district court could do is, I mean, here they poured us out on jurisdiction. But if it granted the merits, it could say, you know, you're right. 5 U.S.C. 7521 is unconstitutional. ALJs can be removed by the MSPB at will. And in that world, now you're back to the agency. But you're, in our view, back at a different agency where we at least kind of know who to complain about if we think we're being mistreated by the ALJs. Thank you, counsel. Mr. Stewart. Mr. Chief Justice, and may it please the court. It is a longstanding principle of administrative law that courts will not intervene in an ongoing agency proceeding until that proceeding culminates in a rule or order that imposes sanctions or determines legal rights or obligations. Consistent with that principle, the FTC Act review provisions governing adjudications authorize court of appeals review only of the final commission orders that terminate the proceedings. The APA confirms that this review mechanism is exclusive and further confirms that antecedent steps taken during the adjudications are subject to review on the review of the final agency action. Those provisions taken together make clear that district courts have no authority to intervene constitutional challenges to the commission's conduct of agency adjudications. Axon argues that review of final commission orders will provide inadequate relief because it will not protect it from the burdens associated with the administrative proceedings themselves. But this court has repeatedly rejected similar arguments, both in the agency review context and in applying the collateral order doctrine. The court therefore should hold that the district court lacked jurisdiction over this suit. In the alternative, the court should hold that Axon lacks a valid cause of action because the commencement of a commission adjudication is not immediately reviewable. I welcome the Court's questions. Would you at least give us your clearest textual argument? As Justice Gorsuch mentioned, you have the FTC Act and you have 1331. Could you at least argue textually why there is no jurisdiction as between those two statutes? I guess the other thing I would point to, Justice Thomas, is the APA, and specifically 5 U.S.C. 704, which is reproduced at page 1A of the appendix to our brief. And the relevant sentence for these purposes is a preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. And the court in FTC v. Standard Oil discussed the implications of this provision. And imagine for a second that this sentence appeared as the second sentence of the FTC Act review provision, and you had the first sentence with words to the effect that a person who receives a cease and desist order may file a petition for review in the court of appeals. And then the second sentence said, preliminary steps taken during the adjudication shall be reviewed on review of the final agency action. That would be powerful evidence that Congress intended any review of the antecedent steps to occur in the court of appeals when the final cease and desist order is issued. And the language doesn't have any less salience by virtue of the fact that it appears in the APA instead. Mr. Stewart? So if I understand your answer, and I'm sorry to interrupt you, but I just want to make sure I understand. 1331 grants jurisdiction to district courts. The FTC Act grants jurisdiction to courts of appeals for cease and desist orders. There's no withdrawal jurisdiction anywhere in those statutes. And so you ask us to turn to the APA to discern that. Is that right? Is that your argument? I think the APA confirms that the provision governing review of final cease and desist orders is intended to cover not only the final order itself, but any challenge to the manner in which the proceeding was... Okay, so we're on to the APA now. We're past the FTC Act. And what do you say first to the argument that that contention by the government was forfeited or waived? And second, what do you say to the argument that the sentence you're pointing to in 704 speaks to an agency action that's not directly reviewable, is subject to review on the final agency order, final agency action, and an agency action is defined as a rule, an order, a license, a sanction, or relief, and we have none of those things here. So we don't have agency action. What do you say to those two arguments? I think, as to the first point, I don't think that our court of appeals brief quoted this specific sentence from the APA. We did make the argument in the court of appeals that what they are challenging is not final agency action to begin with because, under standard oil, the commencement of agency proceedings is not reviewable at all. So that argument has been preserved. The second thing I would say is I think that agency action is at issue in this case. That is, Mr. Clement said, what we're really challenging is the composition of the agency or the question of whether it's constitutionally structured. But obviously, as a matter of Article III, a plaintiff couldn't get into court simply by saying the relevant statutory... I'm not concerned about what the plaintiff's saying. I'm concerned about where is the agency action that would implicate 704. That 704, the sentence you rely on, speaks of agency action being reviewable upon the final order. In this case... Where is the agency action under 551... I think it's paragraph 13, maybe? In this... Where is the agency action? I'm just struggling to see where that's present in this case. In this case, it is the commencement of the FTC's administrative adjudication, the commencement by the FTC, and the assignment of that proceeding to an ALJ. And the point I was making is a plaintiff can't get into court simply by saying the statute is unconstitutional because the agency is improperly structured. In order to have Article III standing, the plaintiff would have to say the agency is doing something or is about to do something that injures me. And in this case, the thing that the agency was about to do, because as Mr. Clement said, the suit was filed a few hours before the proceeding was commenced, the thing that Mr. Clement is complaining about is the fact that an administrative adjudication was commenced. Had there been no adjudication commenced, perhaps Axon could have found other... Do we have here a rule, an order, a license, a sanction, or relief? Well, the whole thing that... We don't have that. We don't have any of those things. But that is why we don't have final agency action. But if Mr... We can have an interim order. I mean, there are all sorts of interim orders and interim relief that an agency could grant that would constitute agency action under that definition. If the Commission had given no indication that it intended to commence an administrative adjudication against Axon, then Axon would clearly have lacked standing to raise the claim that the ALJs were improperly insulated from removal. Let me see if I just have a summary of it, textually, for putting aside other things. We don't have anything in the FTC Act. We don't have anything in 1331. We have to go to the APA. We have to find that you didn't waive it, and we have to agree with your understanding of what an agency action is. Is that right? Well, you certainly have to agree that a plaintiff needs to identify an agency action in order to challenge the composition or structure of the agency, but I think that is basic administrative law. I don't think any litigant or justice on the court would say that... I'm going to take that as a yes. I don't understand why you have to go to the APA, Mr. Stewart. I mean, you have a statutory provision that says there's jurisdiction over these cease and desist or other final orders in the courts of appeals. That jurisdiction is exclusive. The question is, what does that subsume? And, I mean, you might be using the APA as kind of an analogy to help you answer that question, but you can answer that question without the APA, that normally in our legal system, we understand that when you give exclusive jurisdiction to a court as to a final order, it also subsumes a whole lot of interlocutory things leading up to it. I would agree that we don't need the APA, that this would be the logical inference to be drawn from the provision that authorizes court of appeals review of final commission orders. I think it is more than an analogy because the APA is not simply a statute that covers district court suits in circumstances where no special review provision exists. The APA provides basic rules of the road even for review of agency action under a special review provision. Go ahead. Doesn't free enterprise stand as a pretty insurmountable barrier to your argument? No, I think there are three distinctions between this case and free enterprise fund. The first is the court in free enterprise fund stressed that in order to trigger an SEC adjudication and thereby get judicial review under the Exchange Act review provision, the free enterprise fund would have had to deliberately committed a violation and subjected itself to penalties. And this court invoked meta-immune which in turn summarizes a long line of this court's decisions that say we really strain to provide judicial review that is not contingent on committing a violation and subjecting yourself to penalties. And the court in Standard Oil addressed this point where the court was explaining why the requirement to participate in the adjudication itself was different from what was at issue in Abbott Labs. And the court said in Abbott Labs we were dealing with judicial review of regulations and the rules imposed legal obligations. You could get penalties. You could be subjected to penalties if you violated them. I thought it was pretty clear in that opinion that the availability, the grant of judicial jurisdiction in other forms wouldn't be read as an implied removal of jurisdiction in 1331. Well the other thing that was different about free enterprise fund was that in that case the plaintiff was not complaining about removal protections that attached to SEC officials who conducted the adjudications. They were complaining about the removal protections for the PCAOB members. And there was only a... But the board's activities were fully under the supervision of the agency. Yes, but the point was their challenge was to an ongoing investigation that affected them on the ground. It had only an attenuated and speculative connection to any potential SEC adjudication. Here the challenge is directed specifically at the adjudication itself. And as I say, the people to challenge the removal protections for FTC ALJs that have standing only if they were involved in an actual or imminent FTC adjudication. The other thing I'd say is in Elgin which was decided two years after free enterprise fund, the court said we don't distinguish for purposes of an exclusive review provision between different types of constitutional claims. In Elgin you understand the response from your friends on the other side that the claims there were intertwined with the proceeding itself before the commission. While in this case it doesn't matter what the commission is going to do under your friend's claim it's still unconstitutionally constituted. I think Mr. Clement with respect was going back and forth between two arguments. That is, he said in this case our claim is systemic. We're not arguing about anything that will happen in any particular adjudication. We're arguing about the way that the commission is structured and the way that its proceedings take place generally. But then when he was asked to discuss Elgin he acknowledged that yes, the claim in that case was that the federal statute that provides for male only selective service registration was unconstitutional. That was the nature of the Elgin plaintiff's claims. And he said it doesn't matter that their legal theory was broad and sweeping. What matters is that they asserted that legal theory as a vehicle for trying to get their own jobs back. And we think he was right when he was talking about Elgin but we think that the same thing is true here. What Axon is complaining about is the fact that they are in an administrative adjudication and their complaint sought certain forms of declaratory relief but the only injunctive relief it sought the only tangible change in the agency's behavior that it sought was terminate the ALJ proceedings and join the administrative adjudication. And so under Elgin the fact that their constitutional basis for seeking that relief is broad and sweeping doesn't mean that they can get into court any sooner than they could get into court... May I step back for a... do you have a sentence finisher there? No, that's fine. I guess I was pretty surprised when I read your brief, Mr. Stewart because, you know, three times in the last couple of decades we've confronted a case like this one and three times we've used Thunder Basin to decide it. And your brief doesn't talk about Thunder Basin until page 51 and it doesn't use... it doesn't talk about Thunder Basin at all in your summary of the argument. And I guess I read your brief and I'm trying to figure out do you think you lose under Thunder Basin? Because I thought Thunder Basin was the law here. We think that we win under Thunder Basin. I think, you know, Mr. Clement thought that the court in Thunder Basin was tilting the scales against the claimants. I think the Thunder Basin perhaps could have been written even more vigorously if it said certain things that we are treating as implications are in fact buttressed by the text of the APA. And so, for instance, the court has said repeatedly when Congress provides for a comprehensive and specific review mechanism governing a particular class of agency conduct, we will often infer from that detail and specificity that it is intended to be exclusive and that review through an alternative district court mechanism is unavailable. And so what we intended to be an important point in our brief was that is not just an inference. The APA actually says that and on the same page of the appendix to our brief, 5 U.S.C. 703 says, the form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or in the absence or inadequacy thereof any applicable form of legal action. And so, again, the APA actually says if there is a special statutory review mechanism and if it is not inadequate, then you have to use that. You can only use the fallback review mechanism in district court in the absence or inadequacy of a special review mechanism. So we were trying to respond to the argument that Thunder Basin is on thin ice because it's all implication by saying, no, there is specific language in the APA that says the same thing. But what about the argument that Thunder Basin either supports you just on its actual elements or doesn't? I'm trying to understand your argument with respect to the collateral nature or not of the claims that are being made in this case. We think Thunder Basin supports us. That is, the first factor is meaningful review available through the special review provision. That maps on precisely to the APA language about inadequacy of review. And we say this is adequate because at the end of the day, if a court agrees with their constitutional theory, it can set aside the final order issue. What about collateral? Isn't that the hardest part for you? I don't think it is because the Thunder Basin test refers to collateral to the review provisions. And in our view, this is really the least collateral thing you can imagine. That is, the very thing, it is not like in Thunder Basin or in Elgin where the plaintiff was complaining about something that happened in the world, the requirement that the employer post a notice in Thunder Basin or the termination from employment in Elgin. And then the question was, do you have to go through this review scheme? Here, the review scheme is the precise thing that they are complaining about. They are saying... I don't understand. Do you think that meaningful review means no review? Do you think a party gets meaningful review if, unless at the end of the administrative proceeding, it can't get any review of its claim? I think if it can't get review of the claim, that would be correct. Sure. The defendant has no review, so what does the word meaningful add to it? I think what the court is perhaps getting at is in circumstances, for instance, like digital equipment. Digital equipment involved a situation in which the defendant said... I'm sorry, a better case would be Mohawk, where the question was, should materials that were arguably subject to the attorney-client privilege be turned over? And the district court said no, and the question was, is that immediately appealable under the collateral order doctrine? And the court said, no collateral order review, that if these materials are introduced at trial, and that's later determined to be error, you can get vacature of the judgment, and that's good enough. And the court acknowledged that wouldn't undo the whole harm of turning over privileged materials, because the privilege was against disclosure at all, not simply about the introduction in court proceedings, but this is good enough. And I think similarly here. And to kind of proceed directly to the argument that Axon is making, that the prime argument as to why review at the end of the day wouldn't be adequate is that it wouldn't save them from the burdens of the proceeding. They would still get review only after having gone through the ALJ and commission adjudication. And that's the kind of argument that the court has rejected time after time. In FTC versus Standard Oil, the claim was there was an inadequate evidentiary basis for commencing the adjudication in the first place. Let me ask a question that is simplistic, perhaps. What sense does it make for a claim that goes to the very structure of the agency having to go through the administrative process? I think we would say two things and I'll say what I really believe to be the less important point first. The first is the FTC commissioners probably don't have anything about their own removal protections that a court would find useful. But the commissioners do have expertise in the way that the adjudications are conducted. And so they could say it might seem like a black box to someone else, but here are the criteria that we use to determine which cases will go to court or which cases Well, I'm talking about let's take the removal claim. That's really what I'm thinking of to start out. I would say two things. The first is even as to that, the FTC commissioners could say here are what we think of as the advantages and disadvantages of removal protections for our ALJs. And the agency couldn't declare the statute unconstitutional so it couldn't provide relief on that ground at the end of the day. But it could still provide something that could be useful to a reviewing court. But the main practical advantage, the main reason we think it makes sense are the reasons that the court identified in FTC v. Standard Oil. First, you avoid piecemeal litigation. If there's ultimately a cease and desist order entered, it may well be that Axon will want to challenge it not just on the ground that various officials had improper removal protections, but also on the ground that there was no antitrust violation or that ALJ committed some error in the conduct of the proceedings. And as the court said in Standard Oil, by deferring review until the end of the day, we ensure that all of those challenges can be consolidated in a single proceeding. But this argument about the removal status of ALJs hangs over everything the agency is doing. Isn't it in your interest to get this decided? Well, we actually have a case out of the Fifth Circuit in Jharkhasi, in which the court recently denied, the Fifth Circuit recently denied rehearing on Bach, in which the Fifth Circuit has held that two layers of removal protections for the ALJs do violate the Constitution. And so we do have a prospect of getting that to the court and getting a final resolution. Now, and that's the way that these issues have been decided recently in cases like Seelah Law, Arthrex, Noel Cannon. You had systemic challenges to the way that agency adjudications were conducted, but the court has always resolved those challenges in the context of an appeal from an actual agency adjudication. And to go back to your prior question, the second thing that the court said in Standard Oil as an advantage of deferring review, in addition to the fact that you avoid piecemeal litigation, is that sometimes the agency adjudication will culminate in a way that makes judicial review unnecessary. And so, for instance, if the FTC ultimately agrees with Axon that there was no antitrust violation here or that it's been sufficiently cured, the court would not need to weigh in. And the court in Standard Oil pointed out that has traditionally been seen as an advantage rather than a disadvantage of requiring agency processes. Given that laundry list of cases where the government didn't prevail, and I gather the one in the Fifth Circuit as well, doesn't that underscore the need for direct, a direct proceeding to raise the constitutional claim rather than waiting however many years before the agency? I mean, this is true of deferral of review generally in both in the collateral order doctrine and in the agency review context that, yes, when a challenge has been found to be meritorious, we will almost always say looking back on it, it would have saved people time and trouble if there had been a more expeditious... Well, that's the case with respect to one, but this is a series of cases that are a constellation around some fairly basic propositions. And to have it go over and over and over again, it does make the case about the need for direct resolution of the related claim pretty strong. Well, as we've said in our brief, mandamus review is available in extreme cases. And so, for instance, if an agency had simply flouted SELA law, or, I'm sorry, had flouted Lucia, and in the wake of Lucia, had continued to conduct adjudications through ALJs who had not been appointed in conformity with the appointments clause, then mandamus review could have been granted. But I think it would be perilous to try to identify a class of systemic challenges that, from recent experience, we think are sufficiently likely to proceed that they should go to the front of the line. Isn't that a little awkward,  that we would think that the APA or whatever precludes 1331 jurisdiction to resolve these claims, but it doesn't preclude all writs act jurisdiction in the district court to bring these claims? I mean, what if Mr. Clement had simply styled this as a mandamus petition, suggesting that the FTC had acted wholly without jurisdiction, which is a classic mandamus argument, because of all of our mountain of precedent with respect to two layers of removal? He certainly could have made that argument. And so then we would have been district court, and that would have been okay. No, but first, the mandamus petition would have had to be filed in the court of appeals. That is, the 1651 authorizes courts to issue writs in aid of their jurisdiction, and we've cited a couple of these. Okay, so he would have been in the court of appeals, but he could have gotten to a court immediately to the degree to raise his claim if he had simply styled it under the All Writs Act rather than under 1331. The only claim that he could have raised under mandamus would have been that he had a clear and indisputable right to this relief, and I think that even... Well, I think that's the nature of his argument, that the two layers of removal is clear and indisputable. It can't be... Let's suppose it were. He could do that. Oh, if it were clear and indisputable, if the court in Free Enterprise Fund had said, and our holding about double-for-clause removal applies to adjudicative officials as well, he would have a clear and indisputable right to relief. Now, the court in Free Enterprise Fund did the opposite of that.  we are specifically reserving the question whether adjudicative officials are to be treated differently. He... Mr. Clements may win on that argument in the fullness of time, but I don't think he could plausibly have told a court of appeals on a request for mandamus that he had a clear and indisputable right to that relief. Why does the APA preclude 1331 but not All Writs? Again, I don't think of it as the APA precluding. The APA confirms the inference that the court of appeals is the only court to exercise review. And, in general, the court of appeals jurisdiction is limited to the final cease and desist order. But we cited two cases at page 50 of our brief that say when the All Writs Act refers to issuing writs in aid of your jurisdiction, that can mean not only an actual pending appeal, but a potential appeal. And so, the court that could review the cease and desist order has a form of ancillary jurisdiction to superintend the administrative process to the extent of being able to step in if there is really an egregious deviation from appropriate practice. Mr. Seward, going back to Thunder Basin, I told Mr. Clement that I thought his worst factor was meaningful review. I think that the other two factors are pretty darn bad for you. On expertise, the court and free enterprise fund, whatever distinctions there might be as between free enterprise fund and this case, the court and free enterprise fund just says you lose on expertise. Then, on collateral, I mean, I think just the ordinary understanding of what we mean when we use that term is, is it unrelated to the essence or the subject matter of the dispute. And a claim that goes to the  of the agency structure as a whole is completely unrelated to the subject matter of the suit. So, why aren't those two pretty easy wins for Mr. Clement? I think as to the, even as to the expertise factor, the SEC may have lacked expertise regarding the way in which the PC, the removal protections for the PCAOB officers, but it  rule of evidence that bound the ALJ, and it was being attacked on the ground that it violated due process because it didn't allow the respondent in the proceeding a sufficient opportunity to rebut the agency's charges. We would surely say that challenge has to go through the administrative scheme. It may, whether the due process challenge succeeds may be unrelated to the merits of any particular allegation that a regulated party has violated the FTC act, but it is still not collateral to the review provisions because it goes to the way in which the administrative adjudication will be conducted, and here we have basically the same thing. The challenge to the removal protections for the FTC commissioners is a little bit different because the FTC does a lot of other things. If the  issued a  then the rule could be challenged on the ground that the commissioners were unlawfully protected from removal, that kind of challenge is not inherently linked. If I cut to the core of your argument, you seem to be  it is not collateral if it arose from an enforcement proceeding, but almost everything is going to arise from an enforcement proceeding. You are basically making the collateral inquiry do no work at all. I think there is a difference between asking did it arise from the enforcement proceeding and was it directed at the  proceeding. For instance, the statute that governs the SEC, the exchange act authorizes the SEC to issue temporary cease and  orders that constrain the regulated parties' conduct while the adjudication is ongoing. The exchange act specifically provides for district court review of those orders because they require the party to do more than participate in the proceedings themselves. They constrain the party's freedom of movement outside the proceedings. Those could be viewed as collateral because even though they are contingent on dependency of an adjudication, they are still not part of the process by which the adjudication is resolved. They affect private conduct outside the scope of the proceedings themselves. One other thing about the collateral order doctrine is that both in the agency review context and in the collateral order context, really the only exception the court has recognized to the general principle that you cannot get out of it simply by invoking the burdens of the proceedings. The only exception to that principle is claims of immunity. The court has said adverse rulings on the double jeopardy clause, state sovereign immunity, qualified immunity, they can be appealed immediately but other claims that would terminate the proceedings cannot. Justice Thomas? Mr. Stewart, I'm wondering   comment on the petitioner's claims here.  the constitutional claims. Probably the ALJ wouldn't consider them at all and the FTC, if it proceeded to that point, if there was an appeal to the FTC, he's right that the FTC couldn't declare a federal statute unconstitutional but it could say here are the strengths and  of giving removal protections to the ALJs coming at it from a position of expertise. The corollary point I would make in FTC versus standard is      we don't anticipate that the agency in the course of the administrative proceedings will reconsider its original determination that there was reason to believe a violation had occurred. So the justification for deferring review was not that the court expected the agency to shed more light on it. The remedy I assume they would like is an injunction against having to appear before a commission or an ALJ they think is unconstitutionally appointed. So how would they get that remedy at the appellate court level? I think the remedy they would be entitled to at the appellate court level would be vacature of the cease and desist order. If the court of appeals said our rationale for vacating the cease and desist order is that we think the ALJs are unconstitutionally insulated from removal, that would effectively preclude the FTC from using the adjudicative method in any case that could be appealed to the 8th  unless and until the removal protection was eliminated. If the case ever reached this court and the court said it was right to vacate the cease and desist order because we agree that the ALJs had an unconstitutional removal protection, this court could specify what statutory provisions could be severed, et cetera. Justice Alito, on the Thunder Bay factors, does Axon have to win on all three, do you have to win on all three? If Axon prevailed at the first Thunder  factor, if it showed that there was no meaningful relief at the end of the day, that would          be tantamount to saying the specified statutory review provision is inadequate for purposes of this sort of claim and that would facilitate suit in  court. Suppose they lose on the first factor but win on the other two, what happens? Do they have to win on all three? I think the first factor under the text of the APA is the most important factor because it says you use the special statutory review procedure unless it  inadequate. Another category of cases I haven't mentioned in which the collateral factor could be relevant is suppose that at the same time Axon had a pending adjudication, the commission issued a regulation that caused Axon separate harm. There is a separate provision of the FTC act that  court of appeals review of regulations and that sort of dispute would be collateral to the adjudication. It would be a legal dispute between the regulated party and the same agency. This is really kind of a simple question.  Mr. Clement will address it when he delivers his rebuttal. Does Axon have to win on all three? Do you have to win on all three? Or do    I'm not trying to be obstreperous, but I think it would depend on the rationale for holding that this is not collateral. If you say so long as it is unrelated to the merits of the claim, then it is collateral, even if it is not  I don't think that would be sufficient. Mr. Sotomayor? I have a question about Matthews versus Eldridge. The night search held that should be understood to mean not the procedural vehicle that a party is using to reverse the agency act decision. But that definition doesn't fit with Matthews versus Eldridge. I think I could be wrong and you can correct me, that  versus Eldridge dealt with a very specific fact pattern. Individuals who had been entitled   security disability benefits were informed that the relevant agency considered them no longer to be disabled and therefore their benefits would be terminated. The specific complaint in Matthews versus Eldridge was my benefits were terminated before I received a  They were still entitled to a hearing down the road and they could get retroactive benefits if they were terminated. But there would be an interruption of the stream of  The court said that is sufficiently collateral to the overall proceedings that you don't have to use the review mechanism that you would use after your benefits claim was finally resolved. But I think that case really has a close resemblance to the collateral, the temporary cease and desist order that I mentioned earlier. Sometimes you have situations where you have an ongoing proceeding and then you have a dispute about what rules will apply while the proceeding continues, before the proceeding is  The court said in Matthews v. Eldridge the claimants didn't have any problem with the totality of the proceedings that would be used to make a final determination of what they got the benefits. I have a second part of this   whether or not they could advise us about that. In an adjudication, that is a pure legal question. Pure constitutional legal question. Rarely fact found in the same way. That is different than the clearance process and prosecutor claims, which they call their two process claims. I think the chief was right. Where you draw that line is really hard to draw. Tell me what the agency could tell us about the other two that counsel is waiting until the end. The first thing we would say about the black box claim, the contention that there is no     proceedings. That is at the farthest removed from any contention that the precedents of this court have more or less decided it, so it is a waste of  What we would say is the attempt to  among these claims is contrary to the court's precedents. That is, Elgin was decided two years after free enterprise fund and the court said it would be unproductive and confusing to try to  among constitutional claims in order to determine which can go forward immediately and which have to wait until the end of the day. What the focus ought to be on is what agency action are you challenging and what relief are you seeking. Here they are challenging the commencement of an adjudication, seeking an injunction against the adjudication, and it doesn't matter what their different theories of relief are, those are the salient points for purposes of when they get into court. On Elgin, you emphasized that the court said that just because it's a  claim doesn't mean that you have to go, that you can avoid the agency review process. That case definitely helps you, no doubt about it. But then free enterprise fund makes clear, and I realize it was two years earlier, that some constitutional claims you can avoid the agency process, namely I think on 490 claims going to the board's existence. And I think where the confusion has come in in the courts of appeals, and the courts of appeals have been very explicit about trying to figure out the distinction between free enterprise fund and Elgin, is that next paragraph of free enterprise fund, which was responding to the government's argument that you could just get review afterwards anyway, and the court said no, not in this particular circumstance because the plaintiff was challenging the investigation itself and there might not be a final sanction. And the question is really, if you're just sticking within the precedent, is that second paragraph in free enterprise fund, is that just responding to the government's    afterwards anyway, and the court said no, not in this particular circumstance       final sanction. And the question is really, if you're just     free enterprise fund, is that  to the government's argument that you could just     not in this       announcing anything new, it was drawing on a long line of precedent. One could say the heart of the opinion and the court really emphasizes the holy collateral factor. And one could say that the heart of the opinion is the paragraph before where in responding to the government's argument the court says petitioners object to the board's existence not to any of its auditing standards. So you could say well, free enterprise fund was about a challenge to the board's existence or structure and therefore it is  I guess the two things I would say are first Elgin did come two years after free enterprise fund and said don't distinguish among constitutional claims. The other thing I would say is to the extent that you read the paragraph as the heart of the opinion, then the case was drawing on a very longstanding well-established body of  It was articulating a principle that the court had articulated time and again that regulated parties should not have to commit violations in order to get judicial review. If you say the crucial part of the opinion was the part that said this is a systemic challenge to the very composition of the agency, you are making a  It is very hard to square with constitutional avoidance principles. We will try particularly hard to avoid constitutional challenges if it is possible to do so. It would be peculiar to say at a stage of the proceedings where you couldn't raise any other sort of challenge, you can raise a broad range of constitutional challenges to the very composition and structure of the agency. Thank you. Justice Barrett? I have a question about meaningful review. It overlaps a little bit with a collateral point. On page 36 of his brief, he points out that it is not that it must pay an invalid fine or should not lose a liability on a constitutional basis. The relief that it is seeking isn't going to get it off the hook from liability altogether for either a constitutional reason or some reason related to the application of the statute to its facts. Even a structural challenge to the agency is a means of escaping from an ultimate order. It is a challenge that you can make to get out from under it. But I take Mr. Clement's point to be that the most we get is a do-over. This isn't just about having to endure the expense and the inconvenience of proceedings before we can ultimately challenge them and get relief. It is that the relief that we get in the end isn't an ultimate out from liability, but it is simply saying if you want to come after us again, you have to do it in a properly constituted agency. Is that an argument that you find persuasive on the meaningful review point? I don't because if anything you would think it would cut the other way. If anything you would think they would be arguing getting this particular cease and  order set aside wouldn't provide adequate relief because they could always come at us some other direction. I think still in  my   only real reason they said this would be inadequate is we will have to go through the proceeding itself if we have to wait for a cease and  order. That's not a sufficient basis either for avoiding the limits on judicial review or getting immediate review under the collateral order doctrine. Justice Jackson. Thank you counsel. Thank you. Rebuttal Mr.  Thank you. Just a few points in rebuttal. First of all my friend on the other side is very focused on the review of  action. We are challenging the constitutionality of statutes that insulate agency officials from presidential removal and we are challenging the assignment process that actually precedes any agency action by the FTC. My friend loves the standard oil case but the standard oil case is a finality case. It is not strictly speaking a jurisdictional case. It also illustrates how different this case is from that. In that case what standard oil's beef was about was  initiation of a complaint. Of course that is an unright challenge because that agency action is very specific to that individual company and will eventually be merged into the final agency action. But what we have in these cross-cutting constitutional claims is fundamentally different. My friend also invoked this argument in the brief, this standing jurisdiction trap. Until you have an agency action you don't have standing. As soon as you do you are stuck in the  jurisdiction. That is wrong on both ends. First of all if we have a reasonable belief that we are about to be subject to agency action we think is unconstitutional the government would have to come in and say they have no reasonable risk. I don't think they could have done that the morning they were going to be subject to government action. On the back end we think for all the reasons we have talked about we are not in this jurisdiction trap. On the difference between the APA factors and the Thunder Basin factors I was surprised when the government was asked about the Thunder Basin   took from the whole colloquy that the government's view is that the Thunder Basin factors are an inadequate gloss on where the APA would get you. That starts to make me think the straightforward way of approaching this is right. I thought the best thing you could say about the Thunder Basin factors is they get you where you would get with the APA anyway. If the government thinks that is not the right gloss on the APA maybe we should stick with the text. That brings us to the Thunder Basin   designed to be mutually exclusive and collectively exhaustive. If you look at the way this court applied them they tend to sweep one way or the other. I suppose if there were a case of a true tie or toss-up I would like to think the tie would go to the citizen and not to judicial review. Lastly,  issue of meaningful relief. As to the removal claims in particular, with all due respect to this court, if you look at what the splintered decisions in the Collins case when it came to relief for this kind of removal action when it is retrospective, that seems like a particularly good reason to allow prospective relief and say if an agency is unconstitutionally structured we shouldn't have to go in there prospectively and don't have to get into difficult questions about how to remedy the situation retrospectively. Second, on the government's response about the case, if you think about the answer there, there is a question in  2017. The government's response is you might be able to review that question in October 23 if and only if the government decides to file a cert petition. From the perspective of those subject to this unconstitutional action, that is not good enough. We should be able to go into court under 1331 and get an immediate answer as to whether or not the writing is on the wall and the structure is unconstitutional. Lastly, the government says it is every citizen's burden to have to go through these administrative processes before you get judicial review. I don't think that is right if the administrative agency is alleged to      Thank you, counsel. The case is submitted.